- BARNUM STONE *versus* JOHN FOWLE *et al.*

Where a person who was possessed of a right to acquire a clear title to land upon
the performance of certain conditions, executed a bond in which, after a recital,
that he had sold the land to the obligee, it was stipulated, that if the obligee should
pay a negotiable note given in part payment therefor, at its maturity, and should
give satisfactory security for the residue of the purchase money payable at a future
time, the obligor should *thereupon* convey the land to the obligee in fee, it was *held*,
that this was a contract for land, and not for the right to acquire a title thereto ;
that the terms *in fee*, implied an absolute and unconditional fee simple; that as the
stipulations in the bond were to be performed simultaneously, they were depend-
ent ; and that the obligor not having acquired a clear title to the land at the matu-
rity of the note, the consideration of the note had failed.

THIS was assumpsit on a promissory note, dated Septem
ber 21, 1835, made by the defendants for the sum of $6703·76
payable with interest to Samuel J. Gardner and James T.
Hobart, or their order, in six months from date, and indorsed
by Gardner and Hobart to the plaintiff.

At the trial, before *Putnam* J., the defendants, after proving
that the note had been indorsed to the plaintiff after it had be-
come due, contended that the contract of which the note formed
a part, had been rescinded, and that there had been an entire
failure of the consideration of the note.

In support of this defence, the defendants proved that Gard-
ner and Hobart executed and delivered to John Fowle, one of
the defendants, a bond, bearing even date with the note, in the
penal sum of $40,000, which, after reciting that " whereas
the said Gardner and Hobart have sold to the said Fowle one
undivided fifth part of the township number 5, range 8, on the
east branch of the Penobscot river in Maine, for the sum of
six dollars per acre, one quarter thereof in cash, the remainder
in equal annual payments in one, two and three years from the
seventh day of July last, with interest thereon annually from
said seventh day of July ; and whereas the said Fowle has,
in lieu of said cash payment, given to the said Gardner and
Hobart a note for $6703·76, dated this day, payable in six
months from this date with interest, and signed by himself,
Isaac Fowle," and the other defendants, proceeded as follows ;
" Now if the said John Fowle, or his assigns, snall well and
truly cause the said note to be paid at maturity, according ·o

its tenor, to the said Gardner and Hobart, or their order, and shall cause satisfactory security to be given to said Gardner and Hobart, or their legal representatives, for the remainder of the purchase money, payable, as aforesaid, in one, two and three years from the seventh day of July last, with interest annually from said day ; and the said Gardner and Hobart shall thereupon convey to the said John Fowle or his assigns, in fee, the said undivided fifth part of the township aforesaid ; or if the said Fowle, or his assigns, shall fail to pay the note aforesaid, or to comply with the other terms of payment aforesaid ; then this obligation shall be void, otherwise shall remain in full force and virtue."

The defendants then introduced in evidence a deed from the land agents of Massachusetts and Maine, dated on the 24th of October, 1832, conveying this township to Daniel Spofford and others, in which deed there was reserved to those States a lien on all timber cut on such township, as security for the purchase money unpaid, it being stipulated that no timber snould be cut without written permits from such land agents, and that if the grantees or their assigns should fail to pay either of the notes mentioned in the deed as due to the respective treasurers of those States, or the interest thereon, the deed should be void, and the payments already made, forfeited to such States.

They further introduced in evidence a deed dated on the 27th of February, 1835, by which Spofford and others undertook to grant, bargain, sell and convey to Gardner and Hobart, and their heirs and assigns for ever, the township, to have and to hold &c. for ever, reserving however one thousand acres of land for public uses, averaging in situation and quality with the other land in such township, and also reserving to the States of Massachusetts and Maine, a lien on all the timber cut in the township, as security for the payment of certain notes due from Spofford and others to those States, it being provided that no timber should be cut without written permits from the land agents. The conveyance was also on condition, that if Gardner and Hobart, their heirs and assigns, should well and truly pay those notes within the periods limited therein, according to the tenor thereof, this should be a good and sufficient deed to convey the premises to them and their heirs and assigns ; but

that if the payment of such notes should not be made as above specified, then the deed should be null and void, and all payments made pursuant to this instrument and the contract between the parties should be forfeited to the use of the States ; and Gardner and Hobart were to indemnify Spofford and others from their notes to those States.

The defendants also called the treasurer of Massachusetts as a witness, who testified that one of the notes, referred to in the deed from the land agents to Spofford and others, which became due in October, 1837, was still unpaid. It further appeared, that the lands were under mortgage to Spofford and others to secure a number of promissory notes given to them, exceeding in amount the sum of $23,000, which had not become due on the 21st of March, 1836.

The plaintiff then introduced in evidence a paper, dated on the 13th of January, 1836, signed by John Fowle, authorizing Hobart to give a bond of one fifth of the township to Cyrus Moore, which was to run for sixty days.

It was further proved, that Gardner and Hobart, on July 7, 1835, gave a bond to Ivory Jefferds, similar to that which they gave to Fowle, which was not carried into effect, and expired on the 21st of September, 1835, the day when the note now under consideration was given. It appeared that Jefferds, while his interest lasted, assigned to several persons, his " right, title and interest in the within bond," without using any words indicative of his conveying the land.

It was thereupon agreed, that a verdict should be taken for the defendants ; which was to be set aside and the defendants to be defaulted, provided the whole Court should be of opinion, that the evidence above stated would not warrant the jury, with proper directions from the Court as to all matters of law, in finding a verdict for the defendants.

*April 6th.*    *Leland* and *A. Cushing*, for the plaintiff. The bond of Gardner and Hobart to John Fowle, and their right to acquire a title to the land upon the performance of certain conditions, were the subjects of the sale to him, and not the *land ;* and such bond and right were a valuable and sufficient consideration for the note in suit. We admit, that if this was a contract for the sale of *land*, and the title was not good, there would no

have been a valid consideration for the note.   *Smith* v. *Sinclair*, 15 Mass. R. 171 ; *Read* v. *Cummings*, 2 Greenl. 82 ; *Dickinson* v. *Hall*, 14 Pick. 217 ; *Rice* v. *Goddard*, 14 Pick. 293 ; *Trask* v. *Vinson*, 20 Pick. 105.

The stipulations in the bond were not all to be performed simultaneously, and were therefore *independent.* The note was to be paid at a fixed time ; but Gardner and Hobart were under no obligation to convey till the security was given by Fowle.   *Couch* v. *Ingersoll*, 2 Pick. 292 ; *Kane* v. *Hood*, 13 Pick. 281.   Besides, covenants are not concurrent, unless they are to be performed *between the same parties,* as well as the same time.   Now here the note was made payable to any person who should be the holder at the time when it became due.   The defendants knew all the facts, and there has been no fraud.   They are therefore bound to pay the note ; and their remedy is upon the covenant of Gardner and Hobart.

*C. P. Curtis* and *B. R. Curtis*, for the defendants, to the point, that the recital in the bond of Gardner and Hobart, that they "have sold" to Fowle one undivided fifth part of the township, implied an unincumbered title, cited *Hunter in re*, 1 Edwards's Ch. R. 1 ; that the subsequent part of the bond, setting forth that Gardner and Hobart were to convey *in fee*, also implied that it was to be an unincumbered, unconditional fee simple, 2 Bl. Comm. 105, 106 ; that the acts to be done by Gardner and Hobart and by Fowle being concurrent acts, if one party was unable to perform, no tender of performance by the other was necessary, *Jones* v. *Gardner*, 10 Johns. R. 266 ; *Newcomb* v. *Brackett*, 16 Mass. R. 161 ; *Amory* v. *Brodrick*, 5 Barn. & Ald. 712 ; that if a purchaser of land who has paid a portion of the purchase money, finds that the vendor is unable to convey, he may rescind the contract and recover back the deposit money in an action for money had and received, *Farrer* v. *Nightingal*, 2 Esp. R. 639 ; *Lyon* v. *Annable*, 4 Connect. R. 351 ; *Elliot* v. *Edwards*, 3 Bos. & Pull. 181 ; *Maberley* v. *Robins*, 5 Taunt. 625 ; *Judson* v. *Wass*, 11 Johns. R. 525 ; *Tucker* v. *Woods*, 12 Johns. R. 190 ; that the purchaser in such case might make his election to rescind the contract at any time before entering on the land, *Roper* v. *Coombes*, 6 Barn. & Cressw. 534 ; and that if the

money deposited might be recovered back by the purchaser, *a fortiori* he might resist payment of a note given therefor, *Stephens* v. *Wilkinson*, 2 Barn. & Adolph. 320 ; *Rice* v. *Goddard*, 14 Pick. 293.

*June 17th.*   PUTNAM J. delivered the opinion of the Court. The plaintiff is the indorsee of a promissory note, which was made payable to Samuel J. Gardner and James T. Hobart, or their order, and by them indorsed to the plaintiff after it was due and payable. The defendants therefore may make the same defence which it would be competent for them to make if the suit were in the names of the payees. The signatures of the defendants are admitted, and the note purporting to have been made for value received, the burden is upon the defendants to show a sufficient legal reason why it should not be paid. And they contend, that the contract of which the note formed an essential part has been rescinded, and that there has been a total failure of the consideration for which the note was given.

It is proved, that at the time when the note was made, viz. on the 21st of September, 1835, Gardner and Hobart made and delivered their bond to the defendants, in the penal sum of $40,000, reciting, that " whereas the said Gardner and Hobart have sold to the said Fowle one undivided fifth part of the township number 5, range 8, on the east branch of the Penobscot river in Maine, (the whole township contains, exclusive of reservation, 22,070 acres, more or less,) for the sum of six dollars per acre, one quarter thereof in cash, the remainder in equal annual payments, in one, two and three years from the seventh day of July last, with interest thereon, annually, from said seventh day of July ; and whereas the said Fowle has, in lieu of said cash payment, given to the said Gardner and Hobart a note for $6,703·76, dated this day, payable in six months from this date with interest, and signed by himself, Isaac Fowle," and the other defendants, (being the note now sued upon in this action.) The bond then proceeds to declare the condition thereof as follows : " Now if the said John Fowle, or his assigns, shall well and truly cause the said note to be paid at maturity according to its tenor, to the said Gardner and Hobart, or their order, and shall cause satisfactory security to be given to said Gardner and Hobart, or their legal representatives, for the

remainder of the purchase money, payable, as aforesaid, in one, two and three years from the seventh day of July last, with interest annually from said day ; *and the said Gardner and Hobart shall thereupon convey to the said John Fowle or his assigns in fee, the said undivided fifth part of the township aforesaid* ; or if the said Fowle, or his assigns, shall fail to pay the note aforesaid, or to comply with the other terms of payment aforesaid ; then this obligation shall be void, otherwise, shall remain in full force and virtue.''

The verdict was taken by agreement, for the defendants ; which was to be set aside, and the defendants defaulted, provided the whole Court should be of opinion, that the evidence stated would not warrant the jury, with proper directions from the Court as to all matters of law, in finding a verdict for the defendants.

The note became payable on the 21st of March, 1836, but was not paid. And it is proved, that Gardner and Hobart were not then in a condition to convey a fee in the one fifth of the township.

It was proved, that, at the time when the note and Bond were made, Gardner and Hobart had an interest in a deed or contract between them and Daniel Spofford and others, dated on the 27th of February, 1835, by which they undertook to grant, bargain, sell and convey to Gardner and Hobart, and their heirs and assigns for ever, the township of land described in the bond, to have and to hold, &c., for ever, reserving however 1000 acres of land for public uses, averaging in situation and quality with the other land in such township, and also reserving to the States of Massachusetts and Maine, (who were the grantors of the township to Spofford and others,) a lien on all the timber cut on the township, (if any,) as security for the payment of certain notes due from Spofford and others to those States, it being provided, that no timber was to be cut without written permits from the land agents. The conveyance was also on condition, that if Gardner and Hobart, their heirs and assigns, should well and truly pay those notes within the periods limited therein, according to the tenor thereof, this was to be a good and sufficient deed to convey the premises to them and their heirs and assigns ; but if the payment of such notes should

not be made as above specified, this deed should be null and void, and all payments which should have been made pursuant to this instrument, and the contract between the parties, should be forfeited to the use of the States. And Gardner and Hobart were to indemnify Spofford and others from their notes to the States of Maine and Massachusetts.

The conveyance by those States to Spofford and others was on the 24th of October, 1832, subject to similar reservations and conditions as was the conveyance from them to Gardner and Hobart. It was proved, that Gardner and Hobart afterwards, on the 7th of July, 1835, gave a bond to one Ivory Jefferds similar to that which they gave to Fowle, which however was not carried into effect. It expired on the 21st of September, 1835, the day when the note now under consideration was given. It is of no other relevancy, that I know of, to the case at bar, than as it shows the manner in which Jefferds dealt with his interest in the concern while that interest lasted. He assigned to several persons, but used no words indicative of his conveying a fee, but only such as should assign his right to such a particular part, (say one fifth or otherwise,) in the contract, " one fifth part of my right, title and interest to the within bond."

It was proved at the trial, that the condition in the deed or contract of the State of Massachusetts, to Spofford and others, had not been complied with ; for the treasurer of that State produced one of those notes which became due in October, 1837, which was still unpaid. And the lands were also under mortgage to Spofford and others to secure a number of promissory notes given to them, exceeding $ 23,000, which had not become due on the 21st of March, 1836.

Now although Gardner and Hobart, at the time when the note and bond were made, had no title in fee simple to the land, yet they might have procured a good title before the expiration of the six months within which the contract was to have been completed. But they did not do so. They were willing indeed to give a conveyance which should in form purport to convey a good title, and to covenant, in as ample manner as if they had the fee, that the lands were free of all incumbrances, and that they were lawfully seised, and had good

right to convey, and that they would warrant against the lawful claims of all persons. But those covenants would have been broken immediately ; for at the best, Gardner and Hobart had a right to acquire a title to the land upon the performance of certain conditions contained in the conveyance from the States to Spofford and others, and from the latter to Gardner and Hobart.

Now we do not intimate, that such a right is not the proper subject matter of contract, and a good consideration for either money or promissory notes. Indeed the plaintiff insists, that such was the true intent and meaning of the parties to the contracts now under consideration. He contends that this was a purchase of Gardner and Hobart's right in the contract, deed or conveyance which the States of Massachusetts and Maine had made ; that the parties treated for scrip, and one relied upon the promise or undertaking of the other, as independent undertakings. It is said for him, that the defendants knew all the facts applicable to the case, and that there has not been any fraud ; that the defendants are bound by law to pay their note, which was taken as the cash payment on the bond, and that the remedy of the defendants is altogether upon the covenants which were made by Gardner and Hobart.

In the case of *Tinney* v. *Ashley*, 15 Pick. 546, the obligors undertook to execute and deliver a good and sufficient warranty deed of certain land, and the Court held, that the words good and sufficient, were to be applied to the deed and not to the title, and that the condition was performed by making and delivering a deed good and sufficient in point of form to convey a good title, the remedy for any defect being upon the cove nants of warranty contained in the deed.

In *Allen* v. *Sanford*, 5 Mass. R. 439, the Court held, that a condition requiring a conveyance of the land by a good and sufficient deed of warranty, was to be confined to the form of the deed and its execution. But they said, that they did not mean to determine, that in no case such words should not apply to the title. If the money was to be paid on receiving the deed, it might be a reasonable construction, that a good and sufficient title should be conveyed. In that case the money was to be first paid, and the deed delivered in are asonable time after-

Stone
*v.*
Fowle.

wards. Now in the case at bar, the money or equivalent was to be paid at the time when the deed was to be delivered.

But we cannot think that to be the meaning of the condition of the bond now under consideration. If it had been such, if the defendants had purchased the right which Gardner and Hobart had to acquire a title upon certain strict conditions, they would, as prudent men, have taken measures to perform the same. But Gardner and Hobart undertake on their part to convey a fee, which they would not be able to do unless they performed the requisite conditions. The parties were treating for land, and not for a chose in action. The payment of the note as part of the consideration, and giving security for the rest of it, and the conveyance of the fee simple estate, were to be simultaneous transactions. The purchaser was not to part with his money without getting a fee in the land. It is more like the agreement in *Jones* v. *Gardner,* 10 Johns. R. 266. Jones was to give " a good and sufficient deed to vest Gardner with the title of a farm of land with the appurtenances ;" which the court held to mean, that the legal estate in fee " free and clear of all valid claims, liens and incumbrances whatsoever, was to be vested in the vendee ;" and from the fact, that the wife of the vendor had a contingent life estate of dower, the deed which was offered, was considered not sufficient to vest an absolute title. In the case at bar, the condition is to convey in fee ; which we think is to be intended in fee simple absolute.

If instead of giving the note, the cash had been paid, and he vendor had stipulated to convey the land at a certain time afterwards, and had failed to do so, the purchasers would be entitled to recover back the money, as paid upon a consideration that had failed.

The tendency of the judicial decisions of modern times is, to construe dealings and contracts, whether under seal or not, as dependent, since the result is to compel each party to do his duty, in regard to acts which may be properly considered as concurrent, and to prevent litigation. In *Berry* v. *Young,* 2 Esp. R. 639, note, Lord *Kenyon* said, " As the seller has failed in completing his engagement, the plaintiff is entitled to a return of his deposit money.

So in *Roper* v. *Coombes*, 6 Barn. & Cressw. 534, the question was, whether the plaintiff had a right to rescind a contract for a lease, and maintain an action for the money he had paid on account of the bargain. The agreement was made on the 31st of March, for a lease of a house for twenty-one years from the 29th of September then next, for £1000, of which £10 was paid down, £90 was to be paid on the 13th of April then next, and the residue on having the possession. No time was expressly mentioned for granting the lease. The £90 was not paid on the 13th of April. On the 20th of April the plaintiff requested of the defendant to exhibit his title ; but the defendant refused, and demanded the £90, and said that he was not bound to show his title or to grant the lease until the 29th of September. Lord *Tenterden* held, and his ruling was confirmed, that the plaintiff had a right to rescind, inasmuch as the defendant would not exhibit a title ; that it was unreasonable that the defendant should oblige the plaintiff to pay so large a sum as £90, without knowing that the defendant could perform his part of the contract. At the trial the plaintiff proved that the defendant had no right ; and the plaintiff recovered back the deposit money.

That case is very strong against the present action ; for the payment of the £90 was to be paid several months before the lease was to commence. It might be considered that a reasonable time for the granting of the lease had elapsed ; and that therefore the defendant was bound then to make it, which he refused to do. But at any rate the possession was not to be given until September.

In the case at bar, Gardner and Hobart were, by the terms of the bond, to convey the fee, upon receiving the note and security. They were required, " thereupon " so to convey. And as the vendors were not in a condition to convey, it is very clear that the defendants had a right to rescind the contract and refuse to pay their notes. *Judson* v. *Wass*, 11 Johns. R. 528 ; *Tucker* v *Woods*, 12 Johns. R. 190. And the cases to this point may be multiplied indefinitely.

The result is, that there must be judgment for the defendants according to the verdict.